## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**CSX TRANSPORTATION, INC.**                         **CIVIL ACTION**

**VERSUS**                                           **NO: 13-5294**

**A.B.C. MARINE TOWING, L.L.C.,**                    **SECTION: "S" (2)**
**XYZ INSURANCE COMPANY,**
**ARTHUR J. GALLAGHER & CO.,** *in*
***personam*, and the M/V TROY JACOB,**
**Official Number 600831, her engines,**
**tackles, appurtenances, etc.,** *in rem*

### ORDER AND REASONS

   **IT IS HEREBY ORDERED** the Motion for Summary Judgment filed by defendants,

A.B.C. Marine Towing, LLC, in personam, and the M/V TROY JACOB, in rem (Doc. #18), is

**DENIED**.

### BACKGROUND

   This matter is before the court on a motion for summary judgment filed by defendants,

A.B.C. Marine Towing, LLC, in personam, and the M/V TROY JACOB, in rem, in which the

defendants argue that plaintiff's claims against them are barred by the maritime doctrine of laches.

   Plaintiff, CSX Transportation, Inc., owns a railroad and swing bridge that spans the Rigolets

Pass, a straight connecting Lake Pontchartrain and Lake St. Catherine to Lake Borgne and the Gulf

of Mexico near New Orleans, Louisiana.  On June 27, 2010, a barge in the tow of the M/V TROY

JACOB, a tug owned and operated by A.B.C. Marine, allided with one of the bridge's fenders.  After

the allision, the CSX bridgetender, Allen D. Graham, contacted the vessel via radio to obtain the

vessel owner's name and address, the vessel's home port, and the captain's name and address.  CSX

asserts that the captain of the M/V TROY JACOB, Calad Gisclair, refused to provide the requested

information.  Graham reported the allision to the United States Coast Guard.  In his March 24, 2014,

affidavit Graham stated that the allision caused new damage to the bridge. Captain Gisclair also reported the allision to the United States Coast Guard, stating that there was "no damage to the bridge or tow."

On July 1, 2010, Todd Eymard, the owner of A.B.C. Towing and the M/V TROY JACOB, sent an electronic mail message to Jeff Chafin at CSX Towing informing Chafin that the United States Coast Guard notified him of the June 27, 2010, allision and that neither the barges nor the bridge were damaged. Eymard also stated that he was aware of other allisions that involving the bridge and that he would not be held responsible for damage caused by others.

On July 29, 2010, W.T. Ames & Associates, Inc., Marine Engineers, Surveyor & Consultants issued a report regarding the damage to the bridge caused by the June 27, 2010, allision.

On May 8, 2012, John A. Matus, Jr., CSX's Manager of Field Investigations, wrote to the General Manager of A.B.C. Marine to inform him that Captain Gisclair's negligence caused damage to the bridge, and CSX "intends to make a claim against you for those damages." On August 20, 2012, Matus again wrote to A.B.C.'s General Manager. This letter indicates that the May 8, 2012, letter was returned to CSX as unclaimed, and enclosed a bill in the amount of $52,663.28 for the damage. On October 10, 2012, Matus sent a follow up letter seeking a response to the August 20, 2012 letter. A.B.C. Marine claims that it never received any of these letters.

On August 7, 2013, CSX filed this action against A.B.C. Marine, in personam, and the M/V TROY JACOB, in rem, seeking to recover damages related to the June 27, 2010, allision. Defendants filed this motion for summary judgment arguing that the action should be dismissed under the maritime doctrine of laches because they were prejudiced by CSX's unreasonable delay

in filing suit.  Defendants contend that CSX's three-year delay in filing suit prejudiced them because Captain Gisclair is now deceased and CSX repaired the bridge, which prevents defendants from obtaining their own survey of the damage.

## ANALYSIS

### A.     Summary Judgment Standard

Summary judgment is proper when, viewing the evidence in the light most favorable to the non-movant, "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Amburgey v. Corhart Refractories Corp., 936 F.2d 805, 809 (5th Cir. 1991); FED. R. CIV. PROC. 56(c).  If the moving party meets the initial burden of establishing that there is no genuine issue, the burden shifts to the non-moving party to produce evidence of the existence of a genuine issue for trial.  Celeotex Corp. v. Catrett, 106 S.Ct. 2548, 2552 (1986).  The non-movant cannot satisfy the summary judgment burden with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence.  Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).  If the opposing party bears the burden of proof at trial, the moving party does not have to submit evidentiary documents to properly support its motion, but need only point out the absence of evidence supporting the essential elements of the opposing party's case.  Saunders v. Michelin Tire Corp., 942 F.2d 299, 301 (5th Cir. 1991).

### B.     Laches

Under maritime law, "[l]aches is an equitable doctrine, that if proved, is a complete defense to the action irrespective of whether the analogous state [prescriptive period] has run." Mecom v. Levingston Shipbuilding Co., 622 F.2d 1209, 1215 (5th Cir. 1980).  "The existence of laches is a question of fact to be decided by the court after weighing the equities as they appear from the facts

of each case." <u>Esso Intern., Inc. v. S.S. Captain John</u>, 443 F.2d 1144, 1150 (5th Cir. 1971) (citing <u>McDaniel v. Gulf & S. Am. S.S. Co.</u>, 228 F.2d 189 (5th Cir. 1955)).  The United States Court of Appeals for the Fifth Circuit interprets the analogy to the state prescriptive period to determine which party bears the burden of proof.  <u>Mecom</u>, 622 F.2d at 1215.  If the plaintiff files its claim within the analogous state prescriptive period, the defendant must demonstrate inexcusable delay in filing, and resulting prejudice to prove its laches defense.  <u>Id.</u>  However, if the analogous state prescriptive period runs prior to the plaintiff's filing its claim, the plaintiff must prove an absence of prejudice or an excuse for the delay to defeat the defendant's laches defense.  <u>Id.</u>

In this case, the most analogous limitations statute is Louisiana's one-year prescriptive period for torts, Louisiana Civil Code article 3492.[1]  <u>Roland Marine & Mfg. Co., LLC v. M/V A.G. NAVAJO</u>, 2002 WL 31654952, at *3 (E.D. La. 11/21/2002) (Vance, J.) (finding that Louisiana's one year prescriptive period for property damage applied to the laches analysis in a case involving a vessel's allision with a wharf and another vessel); <u>Bisso Marine Co., Inc. v. Conmaco, Inc.</u>, 2001 WL 434493, at *2 (E.D. La. 4/27/2001) (Vance, J.) (Louisiana's one year prescriptive period applied to the laches analysis in a maritime property damage case because 46 U.S.C. § 30106[2] does not apply to property damage).  The allision at issue occurred on June 27, 2010, and this action was filed more than three years later, on August 7, 2013.  Therefore, the analogous one-year state prescriptive

---

[1] Louisiana Civil Code article 3492 provides, in pertinent part:

> Delictual actions are subject to a liberative prescription of one year.  This prescription commences to run from the day injury or damage is sustained.

[2] Section 30106, Title 46 of the United States Code provides:

> Except as otherwise provided by law, a civil action for damages for personal injury or death arising out of a maritime tort must be brought with in 3 years after the cause of action arose.

4

period ran before CSX filed its suit, and CSX bears the burden to prove an absence of prejudice or an excuse for the delay to defeat defendants' laches defense. Mecom, 622 F.2d at 1215.

Delay in filing may be excused when the party against whom the claim is made has notice of the claim and ample opportunity to investigate. W. Wind Afr. Line, Ltd. v. Corpus Christi Marine Servs., Co., 834 F.2d 1232, 1234-35 (5th Cir. 1988). If the delay was inexcusable, plaintiff must demonstrate that defendants were not unduly prejudiced by its inexcusable delay. Id. Undue prejudice, subjects the defendant "to a disadvantage in asserting and establishing his claimed right to defense." Esso Int'l, Inc. v. S.S. CAPTAIN JOHN, 443 F.2d 1144, 1150 (5th Cir. 1971) (citing Point Landry Inc. v. Ala. Dry Dock & Shipbuilding Co., 261 F.2d 861 (5th Cir. 1958)). "[L]oss of records, destruction of evidence, fading memories, or unavailability of witnesses," may constitute prejudice sufficient to bar a claim under laches. Cornetta v. United States, 851 F.2d 1372, 1378 (Fed. Cir. 1988).

CSX argues that the delay in filing suit should be excused because it was pursuing non-litigation means by which to settle its claim against defendants. CSX contends that defendants had notice of the allision as early July 1, 2010, as evidenced by Eymard's July 1, 2010, electronic mail message to Chafin discussing the allision. CSX also points to its letters of May 8, 2012, August 20, 2012, and October 10, 2012, demanding payment for the claim as evidence that its delay in filing suit should be excused, and that defendants had ample opportunity to investigate the claim. Further, CSX argues that defendants were not prejudiced by any delay in filing suit. First, CSX argues that, although Captain Grisclair is deceased, there were other witnesses to the allision from whom defendants can obtain testimony. Also, although defendants did not have an opportunity to

independently survey the bridge damage prior to the competition of repairs, they have the reports of CSX's surveyor, Ames, and can cross-examine him.

Defendants argue that they may have had notice of the allision in July 2010, but they never received the 2012 correspondence, and did not know that CSX was holding them responsible for damage to the bridge until the suit was filed.  Defendants argue that the lack of notice prejudiced their defense because they were not afforded the opportunity to conduct an independent survey of the damage before the repairs were completed, and Captain Grisclair, an important witness, is now deceased.  Defendants contend that the lack of an opportunity to conduct an independent survey of the damage, or participate in CSX's survey, is a disadvantage to their defense.

There is obviously disagreement as to whether defendants received CSX's May 8, 2012, August 20, 2012, and October 10, 2012, correspondence regarding its intent to hold them responsible for damage to the bridge allegedly occurring as a result of the June 27, 2010, allision. These factual disputes regarding defendant's notice of the claim preclude summary judgment on their laches defense.  Thus, their motion for summary judgment is DENIED.

## CONCLUSION

**IT IS HEREBY ORDERED** the Motion for Summary Judgment filed by defendants, A.B.C. Marine Towing, LLC, in personam, and the M/V TROY JACOB, in rem (Doc. #18), is **DENIED**.

New Orleans, Louisiana, this __15th__ day of May, 2014.

**MARY ANN VIAL LEMMON**
**UNITED STATES DISTRICT JUDGE**

6